**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3288-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARJAN KASAPINOV,

    Defendant-Appellant.

_____

Submitted December 1, 2021 – Decided December 10, 2021

Before Judges Whipple and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Municipal Appeal No. 6231.

Charles C. Festa, III, attorney for appellant.

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Mark Niedziela, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Marjan Kasapinov appeals from the Law Division's order entered after a trial de novo on the record. The Law Division found defendant

guilty of driving while intoxicated (DWI), N.J.S.A. 39:4-50(a). Defendant contends the State did not prove operation of the vehicle. We reject this argument because it is inconsistent with well-established precedent and affirm.

The parties stipulated to the following facts except operation of the vehicle. While on patrol on April 15, 2019, Detective Richard DiZenzo of the Woodland Park Police Department responded to a motor vehicle accident at 12:33 a.m. and arrived at the scene in about one minute. DiZenzo observed a 1998 Toyota Corolla that had struck a legally parked vehicle and was blocking the lane of travel.

The Toyota sustained significant front-end damage. Its engine was still running. Both front seat airbags had deployed. From the driver's side, DiZenzo observed a single occupant, later identified as the defendant, "hunched over" in the driver's seat. Defendant's eyes were glassy, bloodshot, and dilated. There was blood, minor lacerations, and red marks on defendant's hands. DiZenzo radioed for medical assistance.

While waiting for the ambulance to arrive, defendant indicated to DiZenzo that he was okay. While speaking with defendant, DiZenzo noticed defendant's "speech was slurred, and there was a strong odor of alcoholic beverage

A-3288-20

emanating from his breath." Defendant stated his credentials were in the vehicle. Defendant was identified after he produced an identification card.

DiZenzo rode with defendant in the ambulance and continued to question him while en route to the hospital. Defendant identified the license found in the Toyota as his brother's. Defendant admitted he had been drinking that night. When asked if he had been drinking, defendant replied, "yes, a little." When asked how many drinks he had, defendant replied, "if I tell you three, you'll assume six," as he winked and laughed.

DiZenzo did not observe any other individuals in the area when he arrived on scene and did not see anyone exit the Toyota while he parked and exited his police vehicle. The only person besides defendant present at the scene was the owner of the parked car.

At the hospital, DiZenzo placed defendant under arrest for DWI and subsequent served him with a complaint-summons for DWI.[1] Defendant consented to having his blood drawn. Defendant suffered a head injury but was treated and released from the emergency department. When asked whether someone could come to sign a Potential Liability form, defendant told DiZenzo

_____

[1] Defendant was also charged with careless driving, N.J.S.A. 39:4-97, and driving while suspended, N.J.S.A. 39:3-40. These charges were dismissed on motion of the State after defendant was found guilty of DWI.

that no one could be contacted because his brother was out of the country, and he could not think of anyone else to contact.

DiZenzo determined that the Toyota was registered to defendant's brother, Ilija Kasapinov. Defendant did not tell DiZenzo before or after he was arrested that someone else had been driving the Toyota.

After the State rested, defendant moved for an acquittal based on a lack of evidence. The judge denied the motion, finding enough evidence to conclude, based on a totality of the circumstances, that DiZenzo had probable cause to arrest defendant for DWI.

Defendant testified that prior to the accident, he was at a bar from about 9:00 p.m. to 10:00 p.m. to celebrate his birthday with his brother, who resided with defendant in Paterson, and friends. Defendant testified that his brother owned the Toyota and drove it that night. Defendant stated that he "drank beer" and "a couple of shots" before leaving the bar around midnight.

Defendant testified that after leaving the bar, his brother was driving the car home and defendant was in the passenger seat. His brother lost control of the vehicle causing defendant to hit his head on the door and the airbags to deploy. After the crash, his brother suggested they both leave the vehicle, but when he tried to exit the automobile, defendant was unable to open the right-

side door due to the damage. When he tried to move to the other side to get out, he struggled with the deployed air bag, ended up in the driver's seat, and passed out. Defendant claimed that his brother left the vehicle to find help.

Defendant did not recall any conversations with DiZenzo at the hospital. When asked if he ever drove Ilija's car and if he drove it the night of the accident, he said "no" and that he never drove that car. He had his own cars.

Defendant contested operation, contending his brother was driving the Toyota. He claimed that after his brother retired, he returned to Macedonia later in April 2018, and was unable to return to speak to the police or testify.

When asked why he did not go to the police and tell them his brother was driving the Toyota that night, defendant stated: "Because he's my brother, I wanted to protect him. And uh, why I am, you know, I am sort of the guilty one." On cross-examination, defendant testified that Ilija left the country ten days or two weeks after the accident and did not return.

Defendant attempted to clarify that when he told DiZenzo at the hospital that his brother was out of the country, he was referring to his brother Kiro, who resides in Macedonia. Defendant noted that Ilija always kept his driver's license, insurance card, and registration in the glove compartment.

A-3288-20

Following summations, the municipal court judge issued an oral decision finding defendant guilty of DWI. She recounted the testimony in detail. The judge found DiZenzo to be credible. She specifically found his testimony that defendant was found behind the wheel with the motor running to be credible. In contrast, the municipal court judge found defendant to be "incredible at best," was not logical, and did not make sense.

The municipal court judge was not convinced by defendant's claim that he did not want his brother to be involved at the scene of the accident. She noted:

> [Defendant] said he didn't even know he was under arrest until he got the tickets in the mail a week to two weeks later. So[,] if he didn't even think he was under arrest, this [c]ourt is hard pressed to believe that he would not have A, indicated his brother was driving the vehicle, B, if he had such brotherly love, why he did not in any instance whatsoever express any concern about the welfare of his brother, since there was an accident that cost him such . . . alleged medical trauma.

The judge was also skeptical of defendant's testimony regarding his attempt to get out through the driver's side, finding it to be " a circuitous [] attempt . . . at pinning the blame on [his] brother, who he showed no concern whatsoever [for]" while talking to Dizenzo. She found defendant lacked credibility because he never spoke to the police about not operating the vehicle on the night of the accident.

The municipal court judge determined that the State proved operation beyond a reasonable doubt and found defendant guilty of DWI. Defendant was sentenced as a fourth DWI offender to a 180-day jail term, a ten-year loss of driving privileges, one-year interlock ignition device, $1,000 fine, and penalties, surcharges, and costs.

Defendant appealed his conviction to the Law Division. On de novo review, the Law Division judge found defendant guilty of DWI, giving "due regard [to the municipal court judge's] credibility findings as she had the opportunity to see and hear the witnesses testify." The judge reasoned:

> Independently, I find the testimony of Detective DiZenzo credible. He was knowledgeable and straightforward. I find the testimony of defendant incredible. It was illogical, unreasonable, and self-serving. Defendant was injured as a result of the crash into a parked vehicle. In his condition, in addition to drinking alcohol, I do not believe that he crawled from the passenger's side to the driver's side with both air bags being deployed. I don't believe his statement that his brother Ilija was driving and ran off afterwards.
>
> I find defendant guilty beyond a reasonable doubt of operating a motor vehicle . . . while under the influence of alcohol. At the start of the trial . . . counsel stipulated that the only issue to be addressed was operation. Operation may be established by observation of the defendant in or out of the vehicle under circumstances indicating that the defendant had been driving while intoxicated. There is no doubt that an intoxicated and sleeping defendant behind the wheel

of a motor vehicle with the engine running is operating the vehicle within the meaning of N.J.S.A. 39:4-50(a), even if the vehicle is not observed in motion . . . .

I find that defendant was operating this motor vehicle [on] April 15, 2019. He was observed by Detective DiZenzo shortly after the accident, sitting in the driver's seat with both air bags deployed with the engine running. No one else was in the vehicle in the surrounding area except for the owner of the parked car that was hit. Defendant's statements that he crawled from the passenger's side to the driver's side while both air bags were deployed and that his brother drove the vehicle . . . is unbelievable and not credible.

Detective DiZenzo testified that based upon his investigation, he concluded that the defendant was driving the vehicle. There's no doubt in my mind that he was driving the motor vehicle which caused the accident. I also find the defendant was intoxicated from the use of alcohol when he was driving. Defendant had a strong odor of alcohol coming from his breath when first observed by Detective DiZenzo, which strengthened while in the ambulance.

The defendant admitted to drinking beers and two shots while at Bask Bar. He was driving erratic as he struck a legally-parked car with enough force to cause significant front-end damage.

The judge imposed the same sentence as the municipal court judge and denied defendant's motion to stay the sentence. This appeal followed.

In this appeal, defendant argues:

DEFENDANT'S CONVICTION FOR DRIVING UNDER THE INFLUENCE SHOULD BE

8

REVERSED AND A FINDING OF "NOT GUILTY" ENTERED AS THE FACTUAL RECORD DOES NOT SUPPORT THE LAW DIVISION JUDGE'S DETERMINATION THAT DEFENDANT OPERATED HIS BROTHER'S VEHICLE OR THAT HE EVER FORMED A CONSCIOUS INTENTION TO DO SO.

Our scope of review is limited to whether the conclusions of the Law Division judge "could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). We apply the two-judge rule. We do "not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Robertson, 228 N.J. 138, 148 (2017) (quoting State v. Locurto, 157 N.J. 463, 474 (1999)). Accordingly, this court's review of the factual and credibility findings of the municipal court and Law Division judges "is exceedingly narrow." State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470).

Defendant contends that the factual record did not support the Law Division judge's determination that defendant was not operating the vehicle within the meaning of N.J.S.A. 39:4-50(a). We disagree.

A person is deemed to have been driving while intoxicated if that person "operates a motor vehicle while under the influence of intoxicating liquor,

9                                                                    A-3288-20

narcotic, hallucinogenic or habit-producing drug . . . ." N.J.S.A. 39:4-50(a).

The State does not have to prove actual operation. State v. Ebert, 377 N.J. Super. 1, 10 (App. Div. 2005). "Operation may be proved by any direct or circumstantial evidence—as long as it is competent and meets the requisite standards of proof." Id. at 10 (quoting State v. George, 257 N.J. Super. 493, 497 (App. Div. 1992)). Generally, the State can prove operation in three ways: (1) "actual observation of the defendant driving while intoxicated," (2) "observation of the defendant in or out of the vehicle under circumstances indicating that the defendant had been driving while intoxicated," or (3) "by defendant's admission." Id. at 11 (citations omitted).

As we recently explained in State v. Thompson:

> [N.J.S.A. 39:4-50(a)] prohibits "operat[ion]" of a vehicle while under the influence. "Operation" has been interpreted broadly, State v. Tischio, 107 N.J. 504, 513-14 (1987); State v. Mulcahy, 107 N.J. 467, 478 (1987); State v. Wright, 107 N.J. 488, 494-503 (1987); State v. Sweeney, 40 N.J. 359, 360-61 (1963), and encompasses more than just "driving" a vehicle. Operation, for example, includes sitting or sleeping in a vehicle, with the engine running, even when the vehicle isn't in motion. Indeed, [t]he Supreme Court has recognized that "operation" may be found from evidence that would reveal "a defendant's intent to operate a motor vehicle." Tischio, 107 N.J. at 513. Thus[,] an intoxicated person could be found guilty of violating N.J.S.A. 39:4-50(a), when running the engine without moving the vehicle, as here, or by moving or

10

attempting to move the vehicle without running its engine, see State v. Stiene, 203 N.J. Super. 275, 279 (App. Div. 1985). The Supreme Court has held that an individual who staggers out of a tavern but is arrested before he is able to insert a key into his vehicle's ignition may be convicted of N.J.S.A. 39:4-50(a). Mulcahy, 107 N.J. at 470, 483. In short, operation not only includes the circumstances to which we have just referred but may also be established "by observation of the defendant in or out of the vehicle under circumstances indicating that the defendant had been driving while intoxicated." [Ebert, 377 N.J. Super. at 11]. For example, we sustained a DWI conviction where the defendant was not even in her vehicle but instead was looking for her vehicle in a restaurant parking lot while in an intoxicated state. See id. at 9-11. There is no doubt that an intoxicated and sleeping defendant behind the wheel of a motor vehicle with the engine running is operating the vehicle within the meaning of N.J.S.A. 39:4-50(a), even if the vehicle was not observed in motion; it is "the possibility of motion" that is relevant. Stiene, 203 N.J. Super. at 279.

[462 N.J. Super. 370, 374-75 (App. Div. 2020) (footnotes omitted), certif. denied, 246 N.J. 214 (2021).]

Here, both the Law Division and the municipal court determined that defendant operated the vehicle while under the influence. The record amply supports that determination. The record included uncontroverted evidence that upon his arrival at the accident scene, DiZenzo observed: (1) the Toyota's engine was still running; (2) defendant was hunched over in the driver's seat with the airbags deployed; (3) defendant appeared disoriented; (4) defendant's speech

11

was slurred and his eyes were glassy, bloodshot, and dilated; (5) defendant's breath smelled of alcohol; and (6) no other individuals, other than defendant and the owner of the parked car, were seen at the accident location. Defendant admitted to DiZenzo that he had been drinking and testified that he had consumed "beers" and "a couple of shots." He does not contest being under the influence of alcohol.

Considering the testimony and fully supported factual findings and credibility determinations, we discern no basis to disturb the Law Division judge's decision. We are satisfied there is sufficient credible evidence in the record to substantiate his finding that the State proved defendant operated the vehicle while intoxicated beyond a reasonable doubt.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3288-20